UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

----------------------------------------------------------------------X

JASON VILLAMAN,

                              Petitioner,

         -against-                        **MEMORANDUM & ORDER**
                                                                  20-cv-01293 (JMA)
UNITED STATES OF AMERICA,                   09-cr-00619 (JMA)

                              Respondent.

----------------------------------------------------------------------X

FILED
CLERK
2:11 pm, Jan 12, 2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

       Petitioner Jason Villaman, proceeding <u>pro se</u>, moves to vacate his sentence pursuant to 28 U.S.C. § 2255. (Petition, ECF No. 543.) Petitioner alleges that he was denied his Sixth Amendment right to effective assistance of counsel at his resentencing because his attorney did not conduct a proper presentence investigation of mitigating factors and did not obtain a psychological evaluation of Petitioner. (Petition at 4, 23.) For the reasons set forth below, the Petition is DENIED.

## I.    BACKGROUND

### A.    <u>Conviction and First Sentencing</u>

       On May 26, 2011, following a month-long trial by a jury, Petitioner was convicted of sex trafficking, forced labor, bringing and harboring aliens, and conspiracy. (ECF No. 233.) Petitioner's convictions were based on his role in the operations run by a codefendant Antonio Rivera, who owned and operated two Long Island bars where undocumented immigrants were recruited as waitresses and then forced to engage in the commercial sex acts and other sexual contacts with the establishments' patrons. (Presentence Investigation Report (PSR) ¶ 19-20.) From 2005 until the end of 2007, Petitioner worked at those bars as a driver and security guard and engaged in a variety of unlawful conduct. (PSR ¶ 57.)

At trial, Petitioner was represented by Terrence P. Buckley, Esq., and at sentencing, by Edward P. Jenks, Esq. and Jonathan I. Edelstein, Esq.

The PSR calculated Petitioner's guideline range as life, based on an offense level of 43. (PSR ¶ 217.)

According to the PSR, Petitioner "has been diagnosed [with] mental health problems that went untreated in adulthood," and his school records confirm that he tested at a low-average I.Q., and he was "placed in a special education program in the 3rd grade because he was emotionally disturbed." (PSR ¶ 232.) The PSR also indicated that Petitioner did not request or receive any mental health treatment while in detention. (PSR ¶ 188.)

In his sentencing memorandum, defense counsel objected to various aspects of the PSR, including the application of the four-point enhancement for aggravated sexual abuse and two-point enhancement for serious bodily injury. (2013 Sentencing Mem. at 1-5, ECF No. 358.) The sentencing memorandum requested a "considerably below the advisory range" sentence, stressing, among other things, that Petitioner's "personal history and characteristics … reflect that he is a person with developmental delays, impaired cognitive functioning and deep-seated emotional problems." (Id. at 5-9.) Defense counsel provided the Court with Petitioner's school records documenting Petitioner's challenges as a child, including a child psychiatric evaluation conducted in 1996 reflecting his "inappropriate and confrontational responses to authority and structure," low academic functionality, "difficulty completing assignments on the third grade level in reading, math and spelling." (Id. at 5.) The results of the psycho-educational tests conducted around the same time showed "evidence of learning disability." (Id. at 6.) Furthermore, at the age of 18 – in 1997 – Petitioner was classified as "emotionally disturbed," "delayed with a grade level of 6.1 in reading and 4.2 in math" and having "a moderate dyslexia and an auditory comprehension deficit

as well as a sequential ordering disability." (Id.) In the sentencing memorandum, defense counsel also noted that Petitioner had displayed "facial tics, grimaces and gestures" in court and suggested that they were unconscious and indicative of Petitioners then-present learning and cognitive difficulties. (Id.) Defense counsel argued that the Court should take all this evidence of Petitioner's emotional disturbance and learning disability into account as mitigating factors in the 18 U.S.C. § 3553(a) analysis. (Id.) Counsel raised the same arguments at Petitioner's June 12, 2013 sentencing hearing before the Honorable Sandra J. Feuerstein, advocating that she consider these mitigating factors "for a downward departure for diminished capacity." (Sentencing Tr. at 9–10, ECF. No 545-1.)

Judge Feuerstein adopted all the sentencing enhancements applied in the PSR and ultimately sentenced Petitioner to two concurrent terms of 360 months of imprisonment on both sex trafficking counts, to run concurrently with lesser terms of imprisonment she imposed on the other counts. (Sentencing Tr. at 13-14.) Judge Feuerstein found that this sentence was warranted "[i]n light of defendant's prior criminal history, personal background, the nature, seriousness and the magnitude of the offenses and the harm caused to the[] victims." (Sentencing Tr. at 13.)

**B.     Appeals and Resentencing**

Petitioner appealed his conviction and sentence. The Second Circuit affirmed the conviction, but vacated his sentence, and ordered a de novo resentencing. See United States v. Rivera, 799 F.3d 180 (2d Cir. 2015), cert. denied, 136 S. Ct. 2396 (2016). The Second Circuit held that the reasons for the sentencing enhancements based on serious bodily injury and aggravated sexual abuse were not adequately stated and remanded the case for resentencing. Id. at 188.

Prior to resentencing, an addendum to PSR explained that:

> The defendant stated that he has not received any mental health treatment or mood stabilizing medication during his incarceration, noting that he maintained stable emotional health through his religious connections. MDC records reflect that the defendant has not requested or received psychological services. An intake screening do[ne] by a BOP staff psychologist in August 2013 reflects that the defendant's psychological stability was deemed to be "favorable," and his BOP mental health treatment level was placed at Level 1 (the lowest level requiring no follow up care).

(ECF No. 459 at 3.)

For his resentencing, Petitioner was again represented by Edelstein. In advance of resentencing, Edelstein filed a sentencing memorandum where—in addition to relying on the arguments which he advanced at the 2013 sentencing—he also asserted that evidence of Petitioner's post-judgment rehabilitation called for a downward departure from the Guidelines. (Resentencing Mem. at 6–7, ECF No. 461.) In support, defense counsel attached 29 pages of the records from Petitioner's incarceration. (Institution Records, ECF No. 461-1.) Edelstein also argued that, after the Second Circuit's decision, the serious bodily injury and aggravated sexual abuse enhancements should not apply. (Resentencing Mem. at 1-6.) At Petitioner's December 21, 2016 resentencing hearing before Judge Feuerstein, Edelstein stressed Petitioner's post-judgment rehabilitation and moved for a below-Guidelines sentence of 15 years. (Resentencing Tr. at 4-7, ECF No. 545-2.) Edelstein also again argued that the bodily injury and aggravated sexual abuse enhancements should not apply.

At resentencing, Judge Feuerstein ultimately found that serious bodily injury enhancement was not applicable but concluded that aggravated sexual abuse still applied. (Resentencing Tr.

2:8-3:12.) With a recalculated lower offense level of 41, Petitioner's advisory guidelines range was now 360 months to life. (Resentencing Tr. 2:8-3:5.)

Judge Feuerstein again sentenced Petitioner to the concurrent terms of 360 months on the two counts of sex trafficking, to run concurrently with lesser terms imposed on the remaining counts. (Resentencing Tr. 10:22-11:13.) Regarding the mitigating factors advanced by Petitioner, Judge Feuerstein found "that the nature of these offenses and the period for which they continued … overwhelmed any of the what you refer to as mitigating factors." (Id. at 9:18-20.)

Following resentencing, Petitioner filed a second appeal, arguing that the sentence imposed at resentencing was unreasonable. (Appellant's 2017 Br. at 3, 10–23, ECF No. 545-3.) In a Summary Order dated December 21, 2018, the Second Circuit rejected the appeal, affirming the newly imposed sentence and finding no error in the Court's conclusion that, considering the facts and circumstances of the case, the sentence of 360 months was appropriate. See United States v. Rivera, 758 F. App'x 148 (2d Cir. 2018). Petitioner did not further appeal his conviction or sentence.

### C.  Procedural History

On March 6, 2020, Petitioner timely sought post-conviction relief from the Court. In support of his Section 2255 petition, Petitioner claims that he was denied his Sixth Amendment right to the effective assistance of counsel because his resentencing counsel failed to adequately prepare and investigate in preparation for resentencing by failing to order a psychological evaluation of Petitioner. (Petition at 4.)

## II.   DISCUSSION

### A.  Section 2255 Standard

Section 2255 permits a prisoner in federal custody to move to vacate, set aside, or correct

the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "A petition for relief under Section 2255 shall only be granted for a constitutional error when the sentencing court lacked jurisdiction or when a miscarriage of justice arises due to an error of law or fact which created a fundamental defect." Lopez v. United States, 792 Fed. App'x 32, 35 (2d Cir. 2019) (citations omitted). Relief under Section 2255 is reserved "for prejudicial errors that are so grave, they result in a complete miscarriage of justice." Kassir v. United States, 3 F.4th 556, 564 (2d Cir. 2021) (internal quotation marks, brackets and citations omitted).

### B. Ineffective Assistance of Counsel Standard

Petitioner argues that he received ineffective assistance of counsel during his resentencing hearing because of counsel's alleged "failure to adequately prepare and investigate in preparation for resentencing." (Petition at 17.) Specifically, Petitioner contends that his counsel should have obtained a psychological evaluation of Petitioner. (Id. at 23.) Claims of ineffective assistance of counsel "may appropriately be raised for the first time in a Section 2255 motion, 'whether or not the petitioner could have raised the claim on direct appeal.'" Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (quoting Massaro v. United States, 538 U.S. 500, 504-509 (2003)). Therefore, Petitioner's claim may be presently reviewed.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the Strickland test, demonstrating that (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing norms" and (2) Petitioner suffered prejudice as a result of the counsel's deficient performance. Strickland v. Washington, 466 U.S.

6

668, 692 (1984).  The "Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel flounder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

The first prong calls on a petitioner to demonstrate that counsel acted outside of the wide range of reasonable professional assistance and made errors so serious as to fail to function as counsel guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687-89.  In analyzing this prong, a court must be objective and "eliminate the distorting effects of the hindsight" and "evaluate the conduct from counsel's perspective at the time." Id. at 689. Furthermore, the court is to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.  The second prong of the Strickland test requires a petitioner to show that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." Id. at 694. Crucially, the petitioner must show that "[t]he likelihood of a different result [was] substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).  To establish prejudice in the context of sentencing, the petitioner must demonstrate reasonable probability that, but for counsel's deficiencies with respect to the sentencing matters, the petitioner would have received a lesser term of imprisonment. See Glover v. United States, 531 U.S. 198, 203 (2001).

If the petitioner makes an insufficient showing on one of the prongs, there is no need for the court to address the other.  See Strickland, 466 U.S. at 697.

**C.   Analysis**

Petitioner argues that defense counsel had a "constitutional duty to investigate [Petitioner's] background in preparation for full resentencing" which "was triggered by [counsel's] awareness of the facts set forth in counsel's resentencing memorandum and the supporting

7

documentation cited therein." (Petition at 18.) Petitioner further states that if his resentencing counsel had properly investigated the mitigating evidence and ordered a psychological evaluation, there is a likelihood that it would have influenced the Court's decision regarding Petitioner's sentencing and that such likelihood satisfies <u>Strickland</u>'s second prong undermining confidence in the outcome. (Petition at 28-29.) The Government maintains that Petitioner did not receive ineffective assistance of counsel and argues that Petitioner failed to articulate any facts or circumstances which would likely yield new information concerning Petitioner's cognitive condition not already captured in the available reports. (ECF No. 545 at 5.)

As explained below, Petitioner cannot meet either prong of <u>Strickland</u>.

Before resentencing, defense counsel submitted a sentencing memorandum, arguing that, under the factors set out in 18 U.S.C. § 3553(a), Petitioner should receive a 15-year sentence, well below the advisory Guidelines range. Defense counsel stressed that "[Petitioner's] personal history and characteristics . . . reflect that he is a person with developmental delays, impaired cognitive functioning and deep-seated emotional problems." (Resentencing Mem. at 7.) Attached to the memorandum were Petitioner's school records detailing his developmental impairment and providing details of these assessments.[1] (School Records, ECF No. 461-2.) The records presented to the Court indicated that Petitioner had been diagnosed with emotional disturbance and learning disabilities as a child. (Resentencing Mem. at 8.) Defense counsel also stressed that Petitioner's learning and cognitive difficulties were ongoing, "as shown inter alia by the facial tics, grimaces and gestures that he was noted to have displayed in court, which were often not conscious." (Resentencing Mem. at 8.) Additionally, counsel attached and referenced Petitioner's recent prison records such as progress reports that addressed his post-judgment rehabilitation. (Institution

---

[1] The same records had also been introduced at Petitioner's first sentencing.

Records, ECF No. 461-1.)  Based on these documents, counsel argued that Petitioner's post-judgment rehabilitation warranted a lower sentence than had been originally imposed. (Resentencing Mem. at 10.)

As an initial matter, the crux of Villaman's petition is his claim that defense counsel should have obtained a psychological evaluation of Petitioner in advance of resentencing.  While Petitioner asserts that defense counsel failed to investigate Petitioner's emotional and mental deficiencies in advance of resentencing, Petitioner does not identify any purported deficiency other than the absence of a psychological evaluation.  Here, defense counsel obtained the relevant records concerning Petitioner's mental health and presented those records to the Court at both sentencings.  There is no indication that defense counsel failed to obtain any relevant records beyond those that were already before the Court.  That fact distinguishes this case from Wiggins v. Smith, 539 U.S. 510 (2003) and Williams v. Taylor, 529 U.S. 362 (2000), the cases upon which Petitioner relies in his habeas petition.[2]

Given the relevant records documenting Petitioner's childhood cognitive and emotional challenges that were provided to Judge Feuerstein (and which were also discussed in the PSR), defense counsel was not required to obtain an expert to evaluate those records and Petitioner. Defense counsel also had further reasons to conclude that a psychological evaluation was unlikely to be helpful given that, as the PSR explained, Petitioner did not seek or receive any psychological treatment during his incarceration.

Additionally, at resentencing, defense counsel made a strategic decision to focus on Petitioner's post-judgment rehabilitation.  This approach was particularly reasonable given that

---

[2] Notably, both cases revolve around Section 2254 petitions, challenging state court convictions in capital punishment cases.

defense counsel already knew, from the first sentencing, that Judge Feuerstein had not been swayed by Petitioner's emotional and mental deficiencies, which were part of the record at the first sentencing. Applying proper deference to the counsel's tactical choices in developing resentencing arguments—and, as explained further below, without anything but speculative conclusions by Petitioner that a psychological evaluation would have yielded mitigating evidence that would have persuaded the sentencing judge—Petitioner has not established that Edelstein's representation was unreasonable.

Even assuming arguendo that Edelstein acted unreasonably in not obtaining a psychological evaluation of Petitioner, Petitioner has not shown prejudice. There is not a reasonable probability that such an evaluation would have resulted in a lower sentence.

First, there is no indication that a psychological evaluation of Petitioner would have yielded any mitigating facts that were not already presented to the Court at both sentencing and resentencing. The petition lacks any evidence indicating what such a psychological evaluation would have revealed. Notably, the record does not include any evaluation of Petitioner's records by an expert or any psychological evaluation of Petitioner.[3] Petitioner's claims about the content and impact of the psychological evaluation he claims his attorney should have obtained are utterly speculative. Moreover, there is no indication or allegation that anything in Petitioner's condition changed since 2013 when he was first sentenced. Given the absence of critical evidence here, Petitioner cannot possibly show prejudice.

Second, even assuming arguendo that a psychological evaluation would have provided

---

[3] The record does not indicate that Petitioner ever sought psychological treatment or an evaluation from the prison's medical staff while he incarcerated. Additionally, there is no indication that Petitioner ever made any effort to obtain an independent psychological evaluation—whether through an in-person or telephone evaluation—while he was incarcerated.

Petitioner with some additional mitigation evidence, there is not a reasonable probability that he would have received a different sentence. Based on Judge Feuerstein's balancing of the 18 U.S.C. § 3553(a) factors and statements at both sentencings that she considered all arguments made by counsel, she already was apprised of Petitioner's alleged cognitive impairments as well as other potential mitigating factors such as post-judgment rehabilitation evidence. Judge Feuerstein still found that the severity and nature of Petitioner's crimes outweighed any mitigating circumstances and warranted the imposition of the sentence of 360 months—the lower end of the Guidelines range of 360 months to life. (Resentencing Tr. at 11.) Notably, Judge Feuerstein stated that "while [she] appreciate[d] what [Petitioner] claims will never happen again and therefore speaks to individual deterrence, there's also a message to be sent to society as a whole, that this type of behavior will not be tolerated." (Id. at 10.) Judge Feuerstein also stressed "that the nature of these offenses and the period for which they continued … overwhelmed" the mitigating factors advanced by Petitioner. (Id. at 9:18-20.) Given Judge Feuerstein's reasoning at sentencing—along with the other evidence included in the record, such as the fact that Petitioner did not seek or receive any psychological treatment while incarcerated—Petitioner's conclusory claims of prejudice do not satisfy the "rigorous Strickland standard that additional expert testimony regarding his medical condition would have had a reasonable probability of changing the outcome of his sentence." Guerra v. United States, No.17-cv-4432 (NGG), 10-cr-147 (NGG), 2019 WL 1573588, at *8 (E.D.N.Y. 2019) (citation omitted); see also United States v. Lopez-Osirio, 171 Fed. Appx. 880, 881 (2d Cir. 2006) (finding that the defendant failed to meet Strickland's prejudice prong based on claim that counsel was ineffective by failing to consult outside psychological experts because the judge's sentencing rationale already took related evidence into account).

Finally, the Court denies Petitioner's request for a hearing. A petitioner's application for

11

Section 2255 relief "must contain assertions of fact that a petitioner is in a position to establish by competent evidence" and "[a]iry generalities, conclusory assertions and hearsay statements will not suffice" to warrant an evidentiary hearing. Munoz v. United States, No. 07-cv-2008 (ILG), 2008 WL 2942861, at *7 (E.D.N.Y. 2008) (quoting Haouari v. United States, 510 F.3d 350, 354 (2d Cir. 2007)). "A [petitioner] seeking a hearing on an ineffective assistance of counsel claim 'need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim.'" Guerra, 2019 WL 1573588 at *5 (quoting Raysor v United States, 647 F.3d 491, 494 (2d Cir. 2011)); see also Puglisi v. United States, 586 F.3d 209, 213 (2d Cit. 2009). A petitioner is not entitled to a hearing when his "allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130–31 (2d Cir. 2013) (citation omitted). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." Id.; see also Guerra, 2019 WL 1573588 at *5.

In his reply papers, Petitioner requests an evidentiary hearing, arguing that the Government's response was inadequate to summarily deny his petition. (Reply at 9, ECF No. 557.) Petitioner, however, does not raise any material facts that would warrant a hearing, fails to allege what type of evidence is in his possession that he would produce at such a hearing, and makes only conclusory assertions that some mitigating evidence would result from an "expert report" once an expert evaluates him. (Reply at 8.) Considering the motion papers and the instant record before the Court, which "conclusively show that [Petitioner] is entitled to no relief," 28 U.S.C. § 2255(b), the Court finds that no hearing is warranted, and that Petitioner's ineffective assistance of counsel claim fails because he has failed to demonstrate that the counsel's performance was deficient or that Petitioner was prejudiced.

## III. CONCLUSION

For the foregoing reasons, Defendant's Petition is DENIED. It is further ordered that the Clerk of the Court mark this case and the corresponding civil case, Case No. 20-cv-01293, closed. The Clerk of the Court is respectfully directed to enter judgment. The Court further declines to issue a certificate of appealability because Petitioner has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2); see also Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).

**SO ORDERED.**

Dated: January 12, 2023
Central Islip, New York

                                                          /s/ (JMA)
                                                    JOAN M. AZRACK
                                                    UNITED STATES DISTRICT JUDGE